## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BOBBY AARON** | : | |
| **MITCHELL, SR.,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **Plaintiff,** | : | **1:13-CV-02835-AJB** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner of  Social*** | : | |
| ***Security,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Bobby Aaron Mitchell, Sr. ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g),

1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the

Social Security Administration ("the Commissioner") denying his applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]      The parties have consented to the exercise of jurisdiction by the
undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil
Procedure.  [*See* Dkt. Entries dated 10/10/13 and 10/11/13].  Therefore, this Order
constitutes a final Order of the Court.

AO 72A
(Rev.8/8
2)

("SSI") under the Social Security Act.[2]   For the reasons below, the undersigned **REVERSES** the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this Opinion.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 26, 2010, alleging disability commencing on January 1, 2007.   [Record (hereinafter "R") 157-70]. Plaintiff's applications were denied initially and on reconsideration.   [R77-78]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on January 17, 2012.   [R35-76].   The ALJ issued a partially favorable decision on February 22, 2012, finding that Plaintiff was disabled

---

[2]        Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.   Title XVI claims are not tied to the attainment of a particular period of insurance disability.   *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.   *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.   *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

AO 72A
(Rev.8/8
2)

from January 1, 2007 through January 1, 2008, but determined that Plaintiff experienced medical improvement and was no longer disabled beginning January 2, 2008.  [R12-28].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 25, 2013, making the ALJ's decision the final decision of the Commissioner.  [R1-7].

Plaintiff then filed an action in this Court on August 23, 2013, seeking review of the Commissioner's decision.  [*See* Docs.1-3].  The answer and transcript were filed on January 27, 2014.  [Docs. 9-10].  On March 4, 2014, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 13], and on April 4, 2014, the Commissioner filed a response in support of the decision, [Doc. 16].  Plaintiff did not file a reply brief.  [*See* Dkt.].  Plaintiff's unopposed motion to waive oral argument was granted by minute order on April 9, 2014.  The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STATEMENT OF FACTS[3]

### A.     Background

Plaintiff was 42 years old when the ALJ issued the decision.  [R29, 162]. Plaintiff has a tenth grade education and past relevant work as a construction worker, heavy equipment operator, and septic installer.  [R67, 200].

### B.     Medical Records

Plaintiff was diagnosed with Hodgkin's disease nodular sclerosis in January 2007 and subsequently underwent four rounds of chemotherapy.  [R398-411, 444,446, 453, 510, 462].  On September 25, 2007, Plaintiff received his final treatment of radiation with good response and was reported to be in complete remission.  [R443, 561].

In January 2008, Plaintiff saw Dr. Richard Carter for a follow-up of his Hodgkin's disease.  [R570-72].  Plaintiff reported to feeling well, having a good appetite and good energy levels.  [R570].  Plaintiff saw his primary care physician, Dr. Wyatt Blake, in March and April 2008.  [R645, 646].  Plaintiff complained that he was having back and wrist pain since chemotherapy and pain in his bones and joints. [*Id*.].

_____

[3]     The records referenced in this section are those deemed by the parties to be relevant to this appeal.  [*See* Docs. 13, 14].

4

Plaintiff returned to Dr. Carter in July 2008.  [R573-74].  Plaintiff complained of generalized bone aches, but was otherwise doing well and his examinations were normal including a normal range of motion.  [*Id.*].

Also in July 2008, Plaintiff sought treatment at the East Metro Rheumatology ("Rheumatology") with complaints of pain in his joints, bones and muscles.  [R427]. He was assessed as having myalgia[4] and myositis[5] and prescribed Tramadol.[6]  [R428]. On follow up with Rheumatology in August 2008, Plaintiff reported that Tramadol helps.  [R429].  However, in September 2008, Plaintiff reported that Tramadol no longer helps with the pain.  [R448].

Plaintiff returned to Dr. Carter in October 2008, reporting severe pain deep in his bones and generalized joint pain, but had an otherwise normal examination.  [R576-77].

---

[4]    Myalgia is another name for muscle pain.  *See* MedlinePlus, Muscle Aches, http://www.nlm.nih.gov/medlineplus/ency/article/003178.htm (last visited 3/23/2015).

[5]    Myositis means inflammation of the muscles that you use to move your body. *See* MedlinePlus, Myositis, http://www.nlm.nih.gov/medlineplus/myositis.html (last visited 3/23/2015).

[6]    Tramadol is used to relieve moderate to moderately severe pain.  See M e d l i n e P l u s ,   T r a m a d o l , http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last visited 3/23/2015).

5

Dr. Carter opined that Plaintiff could not perform any physically strenuous activity, but he was able to perform light or sedentary work, e.g. office work, light house work. [R577]. In April 2009, Plaintiff reported to Dr. Carter that he had shoulder and low back pain. [R579]. Dr. Carter indicated that a musculoskeletal examination was abnormal, but the remainder of the exam was normal. [R580]. Dr. Carter opined that Plaintiff was capable of self-care, but that he was unable to perform any work activities. [*Id.*].

Plaintiff returned to Dr. Blake in May 2009, and Plaintiff's blood tested positive for ANA.[7] [R687]. Plaintiff tested negative for ANA in June 2009. [R435]. In August 2009, Dr. Blake assessed Plaintiff with chronic pain syndrome. [R635]. Plaintiff also saw Dr. Carter in August 2009, who noted that Plaintiff continued to struggle with

---

[7]     ANA stands for antinuclear antibodies which are substances produced by the immune system that attack the body's own tissues. A test may be performed if a person has unexplained symptoms such as arthritis or other pain. The presence of ANA is often identified with systemic lupus erythematosus ("SLE") or can be a sign of some other autoimmune disease. The presence of ANA may be due to myositis or rheumatoid arthritis or some other disease. *See* MedlinePlus, Antinuclear antibody panel, http://www.nlm.nih.gov/medlineplus/ency/article/003535.htm (last visited 3/23/2015).

6

arthralgia.[8]  [R585].  Dr. Carter again opined that Plaintiff was able to carry out light or sedentary work, e.g. office work or light house work.  [R586].

At the request of Dr. Blake, Plaintiff underwent a bone density scan in June 2010, which revealed osteoporosis in the lumbar spine and osteopenia in the left hip. [R655].

In August 2010, Plaintiff underwent a consultative examination with Dr. Diana M. Whiteman.  [R595-97].  Dr. Whiteman indicated that Plaintiff's chief complaint was body pain.  [R596].  Dr. Whiteman further reported that Plaintiff exhibited some lumbar range of motion limitations, but there were no gross functional limitations, except that Plaintiff's back and knee pain restricts excessive bending and lifting.  [R597].

Plaintiff underwent a mental status evaluation with consultative examiner Larmia Robbins-Brinson, Ph.D. in November 2010.  [R620-22].  Dr. Robbins-Brinson diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depression and opined as follows:

Mr. Mitchell appears able to understand simple, detailed and complex instructions.  His ability to carry out instructions appears fair to poor.  The

---

[8]     Arthralgia is another name for joint pain.  *See* MedlinePlus, Joint pain, http://www.nlm.nih.gov/medlineplus/ency/article/003261.htm (last visited 3/23/ 2015).

7

claimant's ability to get along with the public, supervisors, and/or co-workers appears to be adequate. His ability to sustain focused attention appears to be impaired and may not permit the timely completion of assigned tasks or to maintain production norms. It is believed the claimant would not decompensate under stressful conditions given his denial of psychotic symptoms. The prognosis for recovery is fair. It is expected the claimant's current lack of contact with mental health professionals may negatively impact chances for recovery. The claimant is thought to be competent to manage disability funds, if awarded.

[R622].

In March 2011, Dr. Blake completed a Clinical Assessment of Pain form in which Dr. Blake opined that Plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work; if Plaintiff performed physical activity, it would greatly increase Plaintiff's pain to such a degree as to cause a distraction from tasks or total abandonment of task; and that drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. [R782].

Plaintiff saw Dr. Blake in April and May 2011. [R. 769, 772]. Dr. Blake reported that Plaintiff has anxiety which has been present for years, but has gradually gotten worse. [*Id*.]. Also in May 2011, Dr. Blake completed a Physical Capacities Evaluation form in which he opined that Plaintiff could only be reasonably expected to lift and/or carry up to five pounds occasionally and one pound frequently; Plaintiff

8

can sit up to eight hours in a work day, but can only stand or walk up to one hour in a work day; Plaintiff does not require an assistive device to ambulate; Plaintiff can rarely push and pull, use gross manipulation, fine manipulation, bending and/or stooping, reaching, and operating motor vehicles; but Plaintiff could never climb or balance, be around environmental problems or work with or around hazardous machinery. [R783]. It was Dr. Blake's opinion that Plaintiff would be absent from work for more than four days per month due to Plaintiff's severe COPD, chronic joint pain, and peripheral neuropathy. [*Id.*]. Finally, Dr. Blake opined that Plaintiff will be unable to pursue any employment. [*Id.*].

In August 2011, Dr. Blake completed a questionnaire regarding Plaintiff's mental limitations. [R784-86]. It was Dr. Blake's opinion that Plaintiff would have marked limitations in the ability to interact with the general public; perform daily activities, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and respond to customary work pressures. [R784-85]. Dr. Blake further opined that Plaintiff would have extreme limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [R785].

9

## C.    Evidentiary Hearing Testimony

At the evidentiary hearing before the ALJ, Plaintiff testified that he worked as a septic tank labor part time from January 2007 through December 2009.  [R42].  He left that job because he almost killed the owner with the equipment due to the medications he was taking.  [*Id.*].  He was also self-employed as a septic tank worker in 2006.  [R42-43].

Plaintiff testified that he went through six months of chemotherapy and twenty radiation treatments.  [R45].  Plaintiff stated he is on a lot of medication as a result of the chemotherapy and also has COPD, osteoporosis, osteoarthritis, a blood disease and sleep apnea.  [R45-46].  Plaintiff uses a C-PAP machine every night to treat his sleep apnea, but still wakes up very tired in the morning.  [R46-47].  Plaintiff testified that he was diagnosed with chronic bronchitis by COPD which makes it hard to breathe, so he uses inhalers and takes Advair.[9]  [R47].

Plaintiff testified that he suffers from anxiety and depression and is taking medication for it, but is not currently seeing a mental health professional.  [R47-48].

---

[9]     Advair is used to prevent wheezing, shortness of breath, coughing, and chest tightness caused by asthma and COPD, including chronic bronchitis.  *See* MedlinePlus, www.nlm.nih.gov/medlineplus/druginfo/meds/a699063.html (last visited 3/26/2015).

10

Plaintiff stated that the anxiety and depression keep him tired and have a negative affect on the relationship with his wife and children.  [R48].

Plaintiff testified that he has pain all in his joints, his hands and feet swell, and he has "really bad pain" in his hips.  [*Id.*].  He stated that he has a "whole gallon bucket full of medicines" that he takes everyday.  [R50].  Plaintiff rated his pain at an eight out of ten before taking the medication, and a seven out of ten from relief from the medication.  [*Id.*].  Plaintiff testified that side effects from the medication include short-term memory loss, sleepiness, dizziness, and nausea.  [*Id.*].

Plaintiff testified that he uses a cane and Dr. Carter prescribed one due to the medications which make it difficult for Plaintiff to stand up and keep stable without supportive help.  [R51].  Plaintiff stated he can walk about one block at one time and then he has to stop because his knees and feet swell and he would have bad pain in his back.  [R52].  He can stand for about twenty to thirty minutes with a cane before the pain gets bad in his back.  [*Id.*].  Plaintiff can also sit for about thirty minutes before the pain gets bad.  [R53].  He lays down most of the day.  [R55].  Plaintiff explained that Dr. Carter was treating him for a blood disorder that made his heart beat too fast and caused swelling in hands, knees and feet.  [R53-54].

11

On examination by the ALJ, Plaintiff testified that he started having joint pain about five or six months after the chemotherapy and radiation.  [R55].  Plaintiff further testified that he has trouble bending and stooping and has difficulties lifting his grandchild, who weighs about six pounds, because his hands give out on him.  [R57-58].  He is 5'8" tall and weighs about 226 pounds.  [R59].

Plaintiff testified that during a typical day, it takes him about two hours to get out of bed due to pain, and then he would take his medications.  [R59-60].  His wife helps him with showers, he does not cook or clean, and sleeps most of the day.  [R60].  He typically does not go out due to swelling.  [R61].

A vocational expert (VE) characterized Plaintiff's past work as a construction worker as semi-skilled heavy work; his work as a heavy equipment operator as skilled medium work; and his work as a septic installer as medium semi-skilled work.  [R67].  The VE testified that given a person of Plaintiff's age, education and prior work experience, if that person could perform medium work; lift, carry, push and pull up to fifty pounds occasionally and twenty-five pounds frequently; stand and walk for at least a total of six hours per work day; sit for at least a total of six hours with normal breaks; engage in no more than occasional climbing of ladders, ropes, or scaffolds, climbing of ramps and stairs or crawling; engage in no more than frequent bending, stooping,

12

kneeling, or crouching; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation; must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery; cannot adhere to a rapid rate of production; and interact with other people at least on a superficial level, said person could not be a construction worker, but could operate heavy equipment and be a septic installer.  [R67-69].  At the medium exertion level, said person also could be a driver's helper on a sales route or a tray worker/dietary aide in a hospital or health care setting.  [R69-70].

The VE also testified that at the light exertional level (lift, carry, push, pull up to twenty pounds occasionally, and ten pounds frequently), that person could operate a utility tractor, silo operator, or a pull out operator in the floor covering industry, based on transference of his skills as a heavy equipment operator. [R71-72].  Finally, at the sedentary level (ability to lift up to ten pounds occasionally, stand and walk for up to a total of two hours per work day, sit for at least six hours per work day, with a sit-stand option that either permitted them to change positions at will at the work station or to stand and alternate positions at least one time per hour for roughly ten to fifteen minutes at a time), the VE opined that such a person could perform the jobs of patcher (assembly of small electrical devices like sockets or thermostats); optical (eyeglasses) assembler;

13

or taper.[10]  [R73].  However, such a person would not be employable if three or four days of work per month were missed and while on the job, the person needed at least two unscheduled work breaks.  [R74].

## III.    ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant had not engaged in substantial gainful activity since January 1, 2007, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*, and 416.971 *et seq.*).

------

[10]    According to the Dictionary of Occupational Titles, a taper

Places (tapes) adhesive symbols and precision tape on sheets of mylar in conformance with preliminary drawing of printed circuit board (PCB) to produce master layout: Places, aligns, and secures preliminary drawing of PCB and successive layers of transparent sheets of mylar on lighted drafting table, using register bar.  Selects specified symbols and width of tape to indicate peak voltage potential.  Cuts tape and places tape and adhesive symbols on specified sheets of mylar to outline board size, to indicate connector pads, placement of various components, and to trace circuitry of PCB as indicated on underlying preliminary drawing, using utility knife, precision grid, and straightedge.  Places specified adhesive identification and reference numbers on master layout.  Reproduces blueprint copy of master layout, using print machine. Inspects copy to verify accuracy.

D i c t i o n a r y    o f    O c c u p a t i o n a l    T i t l e s ,  http://www.occupationalinfo.org/01/017684010.html (last visited 3/27/2015).

14

3.      From January 1, 2007 through January 1, 2008, the period during which the claimant was under a disability, the claimant had the following severe impairments: Hodgkin's lymphoma, anemia, obesity, drug-related neuropathy, obstructive sleep apnea and osteoporosis (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.      From January 1, 2007 through January 1, 2008, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.      After careful consideration of the entire record, [the undersigned] find[s] that, from January 1, 2007 through January 1, 2008, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he was unable to sustain work at any level of exertion primarily due to Hodgkin's, chemotherapy, radiation and a reasonable recuperation period thereafter.

. . .

6.      From January 1, 2007 through January 1, 2008, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.      The claimant was a younger individual age 18-44, on the established disability onset date (20 CFR 404.1563 and 416.963).

15

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. From January 1, 2007 through January 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

. . .

11. The claimant was under a disability, as defined in the Social Security Act, from January 1, 2007 through January 1, 2008 (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has not developed any new impairment or impairments since January 2, 2008, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from January 1, 2007 through January 1, 2008.

13. Beginning January 2, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.944(b)(5)(i)).

. . .

14. Medical improvement occurred as of January 2, 2008, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

16

. . .

15.  The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

. . .

16.  After carful consideration of the entire record, I find that, beginning January 2, 2008, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should: only occasionally climb ladders, ropes and scaffolds; only occasionally climb ramps and stairs; only occasionally crawl; only frequently bend, stoop, kneel or crouch; avoid concentrated exposure to pulmonary irritants and to hazards; not be expected to adhere to a rapid rate of production; be able to interact with people, at least on a superficial level.

. . .

17.   The claimant is still unable to perform past relevant work (20 CFR 404.1565 and 416.965).

. . .

18.  Since January 2, 2008, the claimant's age category has changed to a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

19.  The claimant's education level has not changed (20 CFR 404.1564 and 416.964).

20.  Beginning January 2, 2008, transferability of job skills is not material to the determination of disability because using the

AO 72A
(Rev.8/8
2)

> Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 21.    Beginning January 2, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>
> . . .
>
> 22.    The claimant's disability ended January 2, 2008 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

[R20.-28].

In support of the decision, the ALJ concluded that from January 1, 2007 through January 1, 2008, Plaintiff's medically determinable mental impairments were not severe. [R20-21].  In making this conclusion, the ALJ found that Plaintiff had only mild limitation in the functional areas of activities of daily living, social functioning, and concentration, persistence, or pace.  [R20]  The ALJ stated that the record indicated Plaintiff was able to structure and execute his daily routine and did not require assistance attending to personal care, he attends church and goes shopping regularly, he drives and watches religious television, and he is capable of managing his own bills and

AO 72A
(Rev.8/8
2)

finances.  [*Id.*].  The ALJ also found that Plaintiff experienced no episodes of decompensation of extended duration.  [*Id.*].

In support of the RFC from January 1, 2007 to January 1, 2008, the ALJ noted that in January 2007, Plaintiff presented to doctors with weight loss, night sweats and difficulty breathing, and testing revealed Plaintiff had mediastinal disease and a biopsy was positive for nodular-sclerosing Hodgkin's disease.  [R21].  Plaintiff submitted to chemotherapy and radiation, which Plaintiff completed on September 25, 2007.  [*Id.*]. Follow up appointments with oncology in November 2007, January 2008, and May 2008 showed that Plaintiff was clinically better.  [R21-22].  The ALJ determined that the effects of Plaintiff's cancer including his chemotherapy, radiation treatment and a reasonable recuperation period were such that Plaintiff was unable to perform any work from January 1, 2007 through January 1, 2008.  [R22].  The ALJ afforded the treatment notes of Drs. Carter and Schnell weight and assigned little weight to the state agency consultative examiners as it related to the established period of disability.  [*Id.*].

In support of the RFC beginning January 2, 2008, the ALJ discussed Plaintiff's follow up visits with Dr. Carter, in which Plaintiff reported to having generalized pain in his joints, particularly in his feet and knees.  [R24].  Plaintiff further reported that he was ambulatory and capable of self-care, but unable to perform any work activities.

19

[*Id*.].  A PET CT scan revealed no strong indication of recurrence of cancer.  [*Id*.].  With regard to Plaintiff's complaints of pain in his back, shoulder and lower extremity, the ALJ noted that radiological studies in March 2008 and April and May 2009 of Plaintiff's lumbar and thoracic spine were negative and a full body bone scan was negative with no significant abnormality.  [*Id*.].

The ALJ recounted Dr. Whiteman's consultative examination, specifically referencing Dr. Whiteman's findings that based on objective findings, Plaintiff had no gross functional limitations except that Plaintiff's back and knee pain restricted excessive bending and lifting; Plaintiff may not be able to continue in his prior line of work which was labor intensive; and Plaintiff should avoid lifting more than ten to fifteen pounds and excessive bending.  [R24-25].

The ALJ further noted that Plaintiff had multiple evaluations which were all benign, bone density scans revealed osteopenia, and although he presented with a cough and upper quadrant pain, radiological studies showed no cardiopulmonary process. [R25].  The ALJ also noted that Dr. Carter indicated Plaintiff was ambulatory and able to carry out light or sedentary work, but should not engage in strenuous activity.  [*Id*.].

The ALJ also related Plaintiff's consultative evaluation with Dr. Robbins-Brinson and specifically referenced Dr. Robbins-Brinson's findings that Plaintiff is able to

AO 72A
(Rev.8/8
2)

understand simple, detailed and complex instructions; Plaintiff's ability to carry out instructions is fair to poor; Plaintiff's ability to get along with the public, supervisors, and/or co-workers appears adequate; and Plaintiff's ability to sustain focused attention appears impaired and may not permit the timely completion of assigned tasks or maintain production norms.  [R25-26].

The ALJ again noted that Plaintiff's mental impairments are non-severe because they cause no more than minimal limitations on his ability to perform work activities. [R26].  In support, the ALJ noted that Plaintiff has no ongoing mental treatment and while Dr. Blake reported that Plaintiff had extreme limitations, Dr. Blake is not a specialist in mental health treatment.  [*Id*.].  The ALJ further added that the record does not support the level of limitation alleged by Plaintiff or implied by Dr. Blake.  [*Id*.].

With regard to Plaintiff's credibility, the ALJ found that Plaintiff is credible as to his pain from drug-related neuropathy and osteoporosis, however, Plaintiff maintains a level of functionality that allows him to engage in work activity.  [*Id*.].  In support of this conclusion, the ALJ noted that because of the subjective characteristics of symptoms and the absence of reliable techniques for their measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify.  [*Id*.].  The ALJ also noted that Plaintiff's treating physician, Dr. Carter, consistently noted that Plaintiff is capable

21

of light and sedentary work, which is consistent with the longitudinal record.  [*Id*.].  The ALJ further stated that while Plaintiff reported using a cane for balance, this was not indicated by the objective medical evidence.  [*Id*.].  Moreover, Plaintiff testified that he started having joint pain approximately five to six months after chemotherapy, however, the record indicates that Plaintiff began to complain of these symptoms in mid-2011. [R27].

The ALJ stated that he specifically considered SSR 02-1p which establishes that obesity will be considered in determining the RFC.  [*Id*.].

The ALJ assigned significant weight to the assessments of the state agency medical consultants as they were consistent with and supported by the objective medical evidence.  [*Id*.].  The ALJ afforded limited weight to the opinion of Dr. Blake that Plaintiff had extreme mental limitations, as they were not supported by the longitudinal record.  [*Id*.].  Finally, the ALJ assigned weight to Dr. Carter's opinion because it is consistent with the objective medical evidence.  [*Id*.].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

22

or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments

23

that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step

five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11ᵗʰ Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11ᵗʰ Cir. 1991).

If the claimant is entitled to disability benefits, the Commissioner is required to conduct a periodic review to determine whether those benefits should continue. *See* 20 C.F.R. § 404.1594(a). If there has been medical improvement related to a claimant's ability to work, the benefits cease. *Id.* Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A decrease in severity determination must be based on improvements in the claimant's symptoms, signs or laboratory findings. *Id.*

Although the ALJ generally follows five steps in evaluating a claim of disability, *see* 20 C.F.R. §§ 404.1520, 416.920, if the issue is "medical improvement" and cessation of disability benefits, the ALJ must follow additional steps. 20 C.F.R. § 416.994. The Social Security regulations provide an eight-step sequential

25

evaluation process for determining if a claimant's disability continues.   *See* 20 C.F.R. § 404.1594(f).  If the claimant is found disabled at any point in the process, the Commissioner must determine if the disability continues through the date of the decision.  *See* 20 C.F.R. § 404.1594(f).  At step one, the Commissioner must determine if the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).  If so, the Commissioner will find that the claimant's disability has ended.  *Id.*

At step two, the Commissioner must determine if the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1594(f)(2).  If the claimant does, the disability continues.  *Id.*

At step three, the Commissioner must determine whether medical improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  If medical improvement occurs, as shown by a decrease in medical severity, the Commissioner proceeds to step four.  *Id.*  If there is no decrease in severity, there is no medical improvement and the Commissioner proceeds to step five.  *Id.*

At step four, the Commissioner must determine whether the medical improvement is related to the claimant's ability to work.  20 C.F.R. § 404.1594(f)(4).  If the medical improvement is not related to the claimant's ability to perform work, the Commissioner

26

proceeds to step five.  *Id*.  If the claimant's medical improvement does relate to his ability to perform work, the Commissioner proceeds to step six.  *Id*.

At step five, the Commissioner must determine if one of two groups of exceptions to medical improvement applies.  20 C.F.R. § 404.1594(f)(5).  If the first group of exceptions applies, the Commissioner proceeds to step six.  *Id*.  If the second group of exceptions applies, the Commissioner will determine that the claimant's disability has ended.  *Id*.  If neither group of exceptions applies, the claimant's disability continues. *Id*.

At step six, the Commissioner must determine whether all of the claimant's current impairments in combination are severe.  20 C.F.R. § 404.1594(f)(6).  If the Commissioner determines that all of the claimant's current impairments in combination do not significantly limit his physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  *Id*.  If the combination of impairments does significantly limit the claimant's ability to perform basic work activities, the Commissioner proceeds to step seven.  *Id*.

At step seven, the Commissioner will assess the claimant's residual functional capacity based on his current impairments and consider whether the claimant can

27

AO 72A
(Rev.8/8
2)

perform his past relevant work.  20 C.F.R. § 404.1594(f)(7).  If the claimant can do such work, the Commissioner will find that the disability has ended.  *Id.*

At step eight, the Commissioner will determine if the claimant can perform other work that exists in the national economy given the claimants residual functional capacity, age, education and past work experience.  20 C.F.R. § 404.1594(f)(8.)  If the claimant can perform other work, he is not disabled.  *Id.*  If the claimant cannot perform other work, his disability continues.  *Id.*

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980) (Murphy, J.).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings

28

are conclusive.  *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal

29

principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises three issues in this appeal: (1) the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating complaints of pain, (2) the ALJ failed to afford proper weight to the medical opinion of Dr. Kenny Blake, a treating physician, or even consider Dr. Blake's medical source statement outlining Plaintiff's physical limitations in the decision, and (3) the ALJ erred in finding Plaintiff's anxiety is non-severe. [Doc. 13 at 1]. The Court first discusses the ALJ's findings with regard to the opinion of Plaintiff's treating physician Dr. Blake, before turning to the issues related to the credibility assessment and Plaintiff's anxiety.

### A.   Dr. Blake

#### 1.   Arguments of the Parties

Plaintiff argues that, while the ALJ discussed and assigned weight to Dr. Blake's opinion regarding his mental limitations, the ALJ failed to address or even mention Dr. Blake's opinions regarding his physical limitations. [Doc. 13 at 17]. Plaintiff argues that this failure makes it unclear as to whether the ALJ even considered the physical limitations outlined by Plaintiff's treating physician. [*Id.*]. Plaintiff also

argues that Dr. Blake's opinion regarding Plaintiff's mental limitations are entitled to controlling weight because Plaintiff had a relationship with Dr. Blake that would classify him as a treating physician and the ALJ failed to point to any evidence in support of assigning Dr. Blake's opinion "limited weight." [*Id*. at 17-18].

In response, the Commissioner argues that the ALJ properly considered Dr. Blake's opinions. [Doc. 14 at 10]. With regard to Plaintiff's physical limitations, the Commissioner argues that Dr. Blake did not adequately explain the basis of his opinions and provided little to no discussion to support his conclusions. [*Id*. at 10-11]. The Commissioner additionally contends that Dr. Blake's opinion that Plaintiff cannot work is not entitled to any particular weight because that is an opinion reserved for the Commissioner. [*Id*. at 11]. She also claims that Dr. Blake's 2011 medical source statement regarding Plaintiff's physical limitations is inconsistent with his own treatment notes and the record as a whole. [*Id*. at 12-13]. As to Dr. Blake's opinion about Plaintiff's mental restrictions, the Commissioner argues that the ALJ properly assigned Dr. Blake's opinion limited weight because, as the ALJ found, Dr. Blake is not a mental health treatment specialist, the record does not support the opinion, and the opinion is contradicted by Dr. Robbins-Brinson's opinion. [*Id*. at 13].

31

## 2.  Discussion

The Court concludes that the ALJ committed error in not discussing Dr. Blake's opinions about Plaintiff's physical limitations.  The ALJ's discussion of Dr. Blake is as follows:

> Further, [Plaintiff] has no ongoing mental treatment.  While Dr. Blake reported the claimant has extreme limitation, I note Dr. Blake is not a specialist in mental health treatment.  Moreover, the record does not support the level of limitation alleged by the claimant or implied by Dr. Blake. . . .  Limited weight is afforded Dr. Blake as the longitudinal record does not support his opinions that the claimant has extreme mental limitations.

[R26, 27].  While it is clear from the decision that the ALJ considered and discussed Dr. Blake's opinions with regard to Plaintiff's mental limitations, the ALJ makes no mention of Dr. Blake's opinions of Plaintiff's physical restrictions.  Thus, it is unclear whether the ALJ even considered Dr. Blake's opinions on the physical impairments at all.

Absent "good cause" to the contrary, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."  *Lewis*, 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate his reasons for doing so.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Moreover, the

32

ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). A statement that the ALJ carefully considered all the testimony and exhibits is not sufficient. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *see also Lawton v. Comm'r of Social Sec.*, 431 Fed. Appx. 830, 834 (11th Cir. June 22, 2011). Without an explanation of the weight accorded by the ALJ to Dr. Blake's opinion on Plaintiff's physical impairments, it is impossible for this reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Cowart*, 662 F.2d at 735. Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, courts decline to affirm simply because some rationale might have supported the ALJ's conclusion. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

The Commissioner's post-hoc rationalizations discrediting Dr. Blake's opinion on Plaintiff's physical restrictions affords no basis for affirmance. *Watkins v. Comm'r of Social Sec.*, 457 Fed. Appx. 868, 872 (11th Cir. Feb. 9, 2012) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.' ") (quoting *Owens*, 748 F.2d at 1516 (involving ALJ's failure to explain credibility finding)); *see also Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1179

33

(11th Cir. 2011) (involving ALJ's failure to mention treating physician's opinion). This is because a court may not affirm an ALJ's decision based on a post-hoc rationalization. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action; [*SEC v.*] *Chenery* [*Corp.*, 318 U.S. 63, 87-88 (1943),] requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . ."); *Owens*, 748 F.2d at 1516 ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making.").

As a result, the Court concludes that this matter must be remanded to the agency for further consideration of Dr. Blake's opinion about Plaintiff's physical impairments. *See Winschel*, 631 F.3d at 1179 (noting, in part, that ALJ failed to discuss, and apparently had not considered, certain elements of examining doctor's opinion, and reversing and remanding for explicit consideration of and explanation of the weight accorded to medical evidence). "An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion." *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008) (quoting *Baker v. Barnhart*, No. 03-C-2291, 2004 WL 2032316, at *8 (N.D. Ill. Sept. 9, 2004));

34

*see also Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Because it is not clear whether the ALJ considered Dr. Blake's opinion regarding Plaintiff's physical limitations, the ALJ has not built such a bridge.[11]

As a result, this matter is **REMANDED** to the Commissioner for further consideration consistent with this Order.

### B.    Pain Credibility

#### 1.    Arguments of the Parties

Plaintiff argues that the Eleventh Circuit has established a three-part standard to determine whether a Plaintiff is disabled based on the allegation of pain. [Doc. 13 at 9]. According to Plaintiff, "the standard requires (1) evidence of an underlying medical condition **and either** (2) objective medical evidence confirming the severity of the alleged pain arising from that condition **or** (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain." [*Id.* (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*,

---

[11]    The ALJ's discussion on Dr. Blake's opinion of Plaintiff's mental restrictions will be discussed in Section VI.C.

921 F.2d 1221, 1223 (11th Cir. 1991)) (emphasis in brief)].  Plaintiff argues that he satisfied the first requirement as he has underlying medical conditions of osteoporosis, chronic pain syndrome, neuropathy related to medication side effects of chemotherapy and radiation treatment for Hodgkin's lymphoma, and arthritis with a positive ANA factor.  [*Id.* at 10 [citing R428, 687, and 655]].  Plaintiff further argues that the third requirement has also been satisfied as his objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. [*Id.* [citing R427-29, 431, 433, 447, 448, 450, 573, 579, 585, 595, 628, 635, 637-40, 643, 646, 741, 769, 772, 820]].  Plaintiff also argues that he testified that he suffered from back and joint pain, particularly in his knees and hips, that his pain was an 8/10 without medications and a 7/10 with medication, he used a cane to help with his balance and pain, and that he can only walk about 20-30 minutes at one time and sit about 30 minutes due to pain.  [*Id.* at 11 [citing R48, 50-53]].  Plaintiff contends that the ALJ discussed the pain standard, but failed to actually apply it.  [*Id.*].  Plaintiff claims that the ALJ simply summarized pieces of the evidence most favorable to the RFC without looking at the entire evidence of record.  [*Id.*].

Plaintiff also argues that while "the ALJ is correct in indicating Dr. Carter opined [Plaintiff] was 'able to carry out light or sedentary work' at times, there is nothing in the

36

evidence to indicate what Dr. Carter defines as light or sedentary work activity making it unclear if this comports with the Dictionary of Occupational Titles." [*Id*.]. Plaintiff argues that Dr. Carter provided boilerplate language throughout the record which supported the ALJ's RFC, but the ALJ failed to address Dr. Carter's numerous opinions that Plaintiff was "unable to perform any work activities." [*Id*. at 11-12 [citing R580, 592, 827, 833]]. Moreover, Plaintiff argues that the ALJ erroneously stated that the record reflects that Plaintiff began to complain of joint pain in mid-2011, [citing R27], when Plaintiff actually began complaining of pain in November 2007 and has been consistent through December 2011. [*Id*. at 12 [citing 427-29, 431, 433, 447, 448, 573, 579, 585, 595, 628, 635, 637-40, 643, 646, 741, 769, 772, 820]].

In response, the Commissioner agrees on the subjective standard for pain as outlined by Plaintiff, however, she argues that the ALJ properly determined that Plaintiff's complaints were not entirely credible as of January 2, 2008. [Doc. 14 at 14]. The Commissioner argues that while the ALJ acknowledged Plaintiff's subjective complaints of pain, [citing R22, 25], the objective medical evidence does not show that Plaintiff has disabling symptoms or limitations. [*Id*.]. The Commissioner contends that Plaintiff's physical examinations from 2008 through 2011 were generally within normal limits, [citing R428, 430-31, 433, 447, 449, 571, 573-74, 577, 579-80, 582-83, 586, 589,

AO 72A
(Rev.8/8
2)

592, 595-601, 790, 794, 798, 803, 807], Plaintiff reported that his medication helps, [citing R25, 820], and in March 2011, Plaintiff reported that he was doing fairly well, [citing R738].  [*Id*. at 14-15].  Moreover, the Commissioner claims that Dr. Carter reported that Plaintiff could perform light or sedentary work in 2008, 2009, 2010, and 2011 [citing R577, 583, 586, 614, 742, 807, 821, 824, 830, 836], and the ALJ found that Dr. Carter's opinion was consistent with the record, [citing R25].  [*Id*. at 15].  Although Plaintiff testified that he used a cane for balance, the Commissioner argues that the record indicated that Plaintiff did not use or require an assistive device for walking and several examiners noted that Plaintiff had a normal gait.  [*Id*. at 17 [citing R26, 583, 592, 596, 616, 621, 783]].

## 2.    Discussion

The Court need not engage in a detailed analysis of the ALJ's treatment of Plaintiff's credibility because this matter must be reversed for the ALJ to consider Dr. Blake's opinion about Plaintiff's physical limitations, which might cause the ALJ to view Plaintiff's credibility in a different light.  On remand, the ALJ should provide a new credibility analysis of Plaintiff's complaints of pain.  Because it is not clear whether the ALJ considered all of Dr. Blake's opinions, it cannot be said that the ALJ considered all of the objective medical evidence regarding Plaintiff's pain.  This

AO 72A
(Rev.8/8
2)

conclusion is further supported by the ALJ's incorrect finding that "the record reflects the claimant began to complain of [joint pain] in mid-2011," [R26-27], when the record reflects that Plaintiff complained of joint pain to Dr. Blake as early as March 2008 and complained of joint pain on numerous occasions, not only to Dr. Blake, but to Dr. Carter and Rheumatology.  [R427, 576, 585, 646].

As a result, this matter is **REMANDED** to the Commissioner for further consideration of Plaintiff's credibility consistent with this Order.

### C.    Mental Restrictions

#### 1.    Arguments of the Parties

Lastly, Plaintiff argues that the ALJ erred in finding that Plaintiff's anxiety is non-severe.  [Doc. 13 at 18].  In support, Plaintiff cites to consultative examiner Dr. Robbins-Brinson's diagnosis of Adjustment Disorder with mixed anxiety and depression as well as Plaintiff's appearance and attitude at the examination, [citing R620-22], Plaintiff's being prescribed Xanax and Ambien, [citing R779], and Dr. Blake's notes and opinions, [citing R769, 772, 784-85, 794].  [Doc. 13 at 19-20].

In response, the Commissioner argues that Plaintiff failed to meet his burden of demonstrating that his anxiety is a severe impairment and that the ALJ properly concluded that Plaintiff's anxiety caused no more than minimal limitations on his ability

39

to perform work.  [Doc. 14 at 17-18].  The Commissioner argues that a diagnosis of an impairment does not by itself establish that the condition interferes with a claimant's ability to perform basic work activities.  [*Id.* at 18 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005))].  Further, the Commissioner argues that the record does not reflect any ongoing mental health treatment other than prescriptions from Dr. Blake which the ALJ properly assigned limited weight to Dr. Blake's opinion of Plaintiff's mental limitations.  Consistent with Dr. Robbins-Brinson's report that Plaintiff may not be able to complete assigned tasks timely or maintain production norms, [citing R622], the Commissioner argues that the ALJ included in the RFC finding that Plaintiff could not be expected to adhere to a rapid rate of production. [Doc. 14 at 20 [citing R24, 25]].  Finally, the Commissioner argues that any error at step two is harmless.  [*Id.*].

### 2.    Discussion

The Court finds that any error in the ALJ's finding that Plaintiff's anxiety is non-severe is harmless.  An impairment will be found to be non-severe if it does not cause more than a minimal effect on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); *Brady v. Heckler*, 724 F.2d 914,

AO 72A
(Rev.8/8
2)

920 (11th Cir. 1984).  The ALJ accounted for Plaintiff's mental restrictions in the RFC which is consistent with Dr. Robbins-Brinson's report.  [R24, 25-26, 620-22].

To the extent Plaintiff argues that the ALJ erred in assigning limited weight, rather than controlling weight, to Dr. Blake's opinion, the Court finds no error.  A treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ is also required to provide good reasons for the weight assigned.  *Id.*  Here, the ALJ assigned limited weight to Dr. Blake's opinions on Plaintiff's mental restrictions because Dr. Blake is not a specialist in mental health treatment and the record does not support the severe level of limitations alleged by Plaintiff or implied by Dr. Blake.  [R26, 27].  The ALJ also noted that Plaintiff had no ongoing mental treatment.  [R26].

Substantial evidence supports the ALJ's findings.  Plaintiff did not cite to any mental treatment with Dr. Blake that predates Dr. Robbins-Brinson's consultative examination, [*see* Doc. 13 at 7 (the first mention of reported anxiety was May 2011)].  Moreover, there are few treatment notes provided by Dr. Blake discussing Plaintiff's mental impairments, [R769, 772, 790], and Plaintiff admits that Dr. Blake is not a

41

mental health specialist. [Doc. 13 at 7]. Further, Dr. Blake's extreme limitations are not consistent with the report of the only mental health specialist who examined Plaintiff. [*See* R25-26, 620-22, 784-85]. Thus, the Court finds that substantial evidence supports the weight assigned to Dr. Blake's opinion regarding Plaintiff's mental restrictions.

As a result, the Court **AFFIRMS** the Commissioner's decision as it relates to Plaintiff's mental impairments.

## VII.   CONCLUSION

For the reasons above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.

The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED,** this the 30th day of March, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)